

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

**ENTERED**
**12/17/2010**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **JULIET HOMES, LP,** | § | **Case No. 07-36424** |
| Debtor(s). | § | |
| | § | **Chapter 7** |
| | § | |
| **JOSEPH M HILL CH 7 TRUSTEE**, *et al*, | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **Adversary No. 09-03429** |
| | § | |
| **ALEX ORIA**, *et al*, | § | |
| Defendant(s). | § | **Judge Isgur** |

## <u>MEMORANDUM OPINION</u>

The chapter 7 Trustees[1] in the bankruptcy cases of Douglas A. Brown; Juliet Homes, LP; and Juliet GP, LLC instituted this adversary proceeding on October 29, 2009. They now seek leave to amend their complaint. The Court grants, in part, and denies, in part, the Trustees' Motion for Leave to File Amended Complaint.

In their investigation into the bankruptcy cases, the Trustees came to believe that the Debtors had fraudulently or preferentially transferred the Debtors' funds. The Trustees sued the alleged recipients of the transfers, and then, several months later, sought to add new claims and dozens of new defendants. By the time the Trustees sought leave to amend their Original Complaint, the statutes of limitations had run on most of the claims against the new defendants.

The Trustees argue that the statutes of limitations should be equitably tolled because of extraordinary circumstances. During the course of their investigation, the Trustees' forensic accountant died. The accountant's death and the Debtors' and defendants' alleged concealment of records, the Trustees assert, justify extending the statutes of limitations. Additionally, the

---

[1] Joseph Hill is the chapter 7 Trustee for the Juliet Homes, LP and Juliet GP, LLC bankruptcy estates. Steve Smith is the chapter 7 Trustee for the estate of Douglas Brown.

Trustees argue that the amendments to the complaint relate back to the date of the original filing under Fed. R. Civ. P. 15.  The Trustees argue both that (i) failure to include the new defendants in the Original Complaint was due to a mistake of identity, and (ii) the underlying claims are based on the same transactions.

The Court finds that the Trustees failed to prove that the Debtors or defendants actively concealed records.  The death of the Trustees' forensic accountant must be balanced against the Court's conclusion that the Trustees did not exercise sufficient diligence in their investigation. Although there is some evidence the Debtors passively concealed[2] records, equitable tolling is not warranted where the plaintiff failed to exercise sufficient diligence.  Additionally, the Trustees' alleged mistake with respect to most of the new defendants was not a mistake of identity, but rather a lack of knowledge.  The avoidance claims against most of the new defendants therefore do not relate back to the time of the Original Complaint, and the claims against these defendants are barred.

Although the Trustees fail to state actual or constructive fraud claims or punitive damages claims against all but a few defendants, the Trustees sufficiently state a claim for conversion/misappropriation/unjust enrichment, and this claim relates back to the Original Complaint with respect to the original defendants.

---

[2] Other courts have referred to the passive concealment of facts that could give rise to a claim as "negligent concealment."  *E.g.*, *IBT Int'l v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 702 (11th Cir. 2005). Because the relevant distinction between passive concealment and active concealment is not whether the potential defendant intentionally concealed, but whether the defendant took affirmative steps to destroy or hide evidence, this Court uses the term *passive concealment* to refer to the failure to disclose information, or similar failures to act that do not rise to the level of actively hiding or destroying evidence.

<u>JURISDICTION</u>

The Court has jurisdiction over this matter under 28 U.S.C. § 1334.  Venue is proper in this District pursuant to 28 U.S.C. § 1409.

<u>BACKGROUND</u>

This adversary proceeding is connected to the bankruptcy cases of Juliet Homes, LP ("Juliet Homes"), No. 07-36424; Juliet GP, LLC. ("Juliet GP"), No. 07-36426 (collectively, "Juliet Debtors"); and Douglas A. Brown, No. 07-36422.  Creditors filed involuntary petitions against each of the three Debtors on September 20, 2007.  Brown and the two Juliet Debtors are closely related.  On his Schedule B, Brown noted that he was the 100% owner of Juliet GP and the 28.376% owner of Juliet Homes.  (No. 07-36422, Doc. No. 56, at 20.)  The Juliet Debtors list interests in each other, of unspecified percentages, on their respective schedules.  (No. 07-36426, Doc. No. 23, at 8; No. 07-36424, Doc. No. 111, at 7.)  Brown is listed as the Managing Member of Juliet GP on Juliet GP's Voluntary Petition and Schedules and on Juliet Homes' Schedules. (No. 07-36426, Doc. No. 23, at 4, 20; No. 07-36424, Doc. No. 111, at 14.)

On Debtors' motion, the Court entered orders for relief on October 31, 2007.  The Court converted Juliet Homes' case and Brown's case to chapter 11 on the same day.  On November 2, 2007, Joseph Hill, plaintiff in this adversary proceeding, became Trustee over the Juliet Debtors' estates.  On Hill's motion, the Court reconverted Juliet Homes' case to chapter 7 on December 3, 2007.

Brown moved to reconvert his individual case to chapter 7 on December 5, 2007, and the Court granted his motion on December 19, 2007.  Steve Smith, also a plaintiff in this adversary proceeding, became Trustee of Brown's chapter 7 estate.

On October 29, 2009, the Trustees filed this adversary proceeding against Brown, other individuals who were alleged to be investors in the Juliet Debtors, and five entities alleged to be affiliated with the Juliet Debtors.  The Original Complaint alleged that Brown and the Juliet Debtors had made avoidable preferential and/or fraudulent transfers to themselves, their affiliates, and their investors under §§ 547 and 548 of the Bankruptcy Code and under Texas law.

The Trustees alleged, for example, that Brown and his partner Bernie Kane charged exorbitant consulting fees against the Juliet Debtors' account and purchased luxury vehicles and expensive personal items out of the Debtor's funds.  The Trustees also alleged that Brown and Kane issued false invoices from fictitious vendors and subcontractors and that Brown and his wife, Caroline Brown, diverted Juliet funds to Brown himself, affiliated entities, and affiliated individuals.  The Trustees additionally alleged that the Juliet Debtors paid kickbacks to insiders, employees, relatives, and other co-conspirators to act as "straw buyers" in the purchase and sale of homes.

On December 2, 2009, the Trustees filed their Amended Complaint.  The Amended Complaint made minor changes to the Original Complaint and was filed within the time allowed by Rule 15(a)(1).

On February 26, 2010, the Trustees filed a Motion for Leave to File Second Amended Complaint and for Extension of Time to Serve Defendants.  (Doc. No. 114.)  The Trustees attached the Second Amended Complaint (Doc. No. 114-1) and the Transfer Chart[3] (Doc. No. 114-2, 114-3, 114-4.)  The Second Amended Complaint expanded the scope of the claims, elaborating on the allegations of an overarching "Ponzi scheme" encompassing the transfers

---

[3]   The Transfer Chart was attached at the Court's direction.  During an initial conference held on January 11, 2010, the Court determined that a chart was required in order to understand the allegations of the complaint and to make the allegations sufficiently specific to provide reasonable notice to the various defendants.

identified in the Original Complaint. The Trustees sought to add dozens of individuals and entities as defendants and to add causes of action for fraud, conspiracy, conversion, and aiding and abetting. The Second Amended Complaint did not itself contain factual allegations against all the new defendants. The Transfer Chart identified transfers to many of the new defendants. However, neither the Second Amended Complaint nor the Transfer Chart made specific factual allegations against 46 of the defendants.

To support their motion to amend the complaint, the Trustees asserted that they did not find out about the additional transfers and the role of the new defendants in time to include them in the Original Complaint. However, the investigation that led to the new allegations in the Second Amended Complaint began a few months before the Original Complaint was filed.

The Trustees' new allegations emphasize the involvement of an entity called The Market on Congress ("TMOC"). The Trustees allege that TMOC was used to funnel money from the Debtors into other entities and to individual investors. According to the Trustees, TMOC was used "to divert millions of dollars belonging to Juliet through checks and wire transfers from accounts held by Juliet and Pinnacle Title." (Second Am. Compl. ¶ 195, Doc. No. 114-1, at 27.)

The Trustees say that they learned about the need to investigate TMOC's role when they received a document mentioning TMOC in June 2009. (Trustees' Post-Hr'g Br. ¶ 39, Doc. No. 198, at 11.) The Trustees had, however, received notice of TMOC's existence and potential importance over a year earlier. Juliet Homes' Statement of Financial Affairs, filed on February 5, 2008, had listed four transfers to TMOC, totaling $74,250.00, in the 90 days before Juliet Homes filed for bankruptcy. (No. 07-36424, Doc. No. 111-5, at 1-8.) And as early as August 2008, Trustee Steve Smith knew that TMOC was possibly an alter ego of Doug Brown. (Discharge Compl. ¶ 14, No. 08-03320, Doc. No. 1, at 7-8.)

In June 2009, the Trustees requested documents from Bank of America regarding the Debtors' and TMOC's finances.  The Trustees received Bank of America's first production of documents in August 2009, before they filed their Original Complaint.  The Original Complaint mentions TMOC and alleges that it played a role in the Debtors' scheme to transfer money: "Brown used affiliated entities including, but not limited to, TMOC . . . to funnel monies out of Juliet and to himself, insiders, the Juliet Investors and other co-conspirators."  (Orig. Compl. ¶ 69(c), Doc. No. 1, at 12.)  However, the Original Complaint did not include TMOC as a defendant.  At the time they filed the Original Complaint, the Trustees had not yet received Bank of America's second production of documents, which would include a record of TMOC's checks.

Theresa Mobley, counsel for the Trustees, testified that the Trustees received TMOC's checks from Bank of America in November 2009.  (Mot. to Am. Hr'g Tr. vol. 2, 177-78, June 30, 2010, Doc. No. 185-1, at 91-92.)  Mobley said that while going through the bank records for the purpose of producing the Transfer Chart for the Court, the Trustees discovered more transfers.  (Mot. to Am. Hr'g Tr. vol. 2, 177-79, June 30, 2010, Doc. No. 185-1, at 91-93.)  The record of checks led the Trustees to believe that the Juliet Debtors had transferred funds to additional entities that had not been named in the Original Complaint.

By the time the Trustees sought to add the new defendants, however, the statutes of limitations had already expired with respect to many of the state-law claims and any new federal-law fraudulent transfer or preferential transfer claims.  The Bankruptcy Code's statute of limitations on avoidance actions expired on October 31, 2009.  11 U.S.C. § 546(a).

Defendants David Greenberg and Greenberg & Company ("Greenberg Defendants") filed a response in opposition to the Motion for Leave to Amend on March 19, 2010.  (Doc. No. 131.)

Thomas Pirtle and the Pirtle Parties[4] filed an opposition response on May 13, 2010, joining in and supporting the Greenberg Defendants' response.  (Doc. No. 142.)  Don Sanders, Don Weir, the Sanders 1998 Children's Trust, and Sanders Opportunity Fund, LP filed a response, also joining in and supporting the Greenberg Defendants' response, on May 13, 2010.  (Doc. No. 143.)  Damazo Vidal joined in the Greenberg Defendants' response on May 14, 2010.  (Doc. No. 146.)  Alex Oria and James Thomas also joined on May 14, 2010.  (Doc. No. 147.)  An evidentiary hearing on the motion began on June 30, 2010, and was continued to July 2, 2010 and then to July 14, 2010.

At the July 2, 2010 hearing, the Court dismissed approximately 46 defendants, those against whom the Trustees made no factual allegations.  The Trustees and the Greenberg Defendants both filed lists of the defendants who were included in the Court's July 2 announcement.  (Doc. No. 195; Doc. No. 197.)  The Trustees attached a Summary Chart showing where, in the Second Amended Complaint or on the Transfer Chart, the Trustees had made allegations against each defendant.  (Doc. No. 197-1.)

The Court asked the parties to file post-hearing briefs.  Briefs were filed by the Reddy/Patel Defendants[5] (Doc. No. 193); the Greenberg Defendants (Doc. No. 194, Doc. No. 199); Thomas Pirtle and the Pirtle Parties (Doc. No. 196); and the Trustees (Doc. No. 198).  On September 9, 2010, the Greenberg Defendants filed objections to the Trustees' brief, seeking to have the Court strike certain statements in the Trustees' brief.  (Doc. No. 200.)

The Greenberg Defendants, Thomas Pirtle and the Pirtle Defendants, and the Reddy/Patel Defendants argue that the Trustees should not be granted leave to amend the pleadings to add

---

[4] Pirtle Investments, LP; Pirtle Land & Cattle, LLC; Alabama/Main Partners, LP; 5020 Interests, Ltd.; and Juliet-Pirtle, LP.

[5] Muduganti J. Reddy, Ravi Reddy, Malladi Reddy, and Shreyaskumar Patel.

new defendants and causes of action. These Defendants argue that the addition of new defendants, after the statutes of limitations have already run on many of the original claims, would be futile. The Defendants also argue that Trustees should not be allowed to add new claims. The statutes of limitations have already run on many of the new claims, according to the Defendants. Additionally, they argue that the Trustees lack standing to assert some of the new claims.

The Trustees argue that the new pleadings are not futile. According to the Trustees, the pleadings against the new defendants relate back under Fed. R. Civ. P. 15(c)(1)(C), which allows amended pleadings to relate back to the original pleadings when the failure to name the new party was based on a mistake of identity. The Trustees also allege that the Debtors and defendants actively concealed the evidence of fraud, and that the Trustees are entitled to equitable tolling of the statutes of limitations. Furthermore, the Trustees allege, the death of Jim Smith, the Trustees' forensic accountant, was an extraordinary circumstance that warrants equitable tolling. If the pleadings relate back or if equitable tolling applies, the amendments would not be futile and should be allowed.

## ANALYSIS

Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). A decision to grant leave is within the discretion of the Court, but Rule 15(a) "evinces a bias in favor of granting leave to amend." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000) (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999)). The Court does not have the discretion to deny leave to amend unless it has a substantial reason for doing so. *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 314 (5th Cir.

1996) (citations omitted). "In deciding whether to grant such leave, the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.*

The Trustees have not unduly delayed amending the pleadings. To determine whether a delay in amending pleadings is undue, the Court considers whether there was "(1) an 'unexplained delay' following an original complaint, and (2) whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Id.* at 316. The Trustees have provided an explanation for the few months' delay in amending the complaint. They presented evidence showing that they were not aware of the facts underlying the amended complaint when they filed the Original Complaint. The Trustees' delay in seeking to amend the complaint was not particularly long, and it was reasonably explained. Furthermore, the Trustees are not seeking to add new defendants and claims on the eve of trial. Discovery has not yet begun in this case. The Court therefore does not deny leave to amend because of undue delay.

There is also no evidence that the Trustees are operating in bad faith or with a dilatory motive. Additionally, the Trustees have not repeatedly failed to cure deficiencies by amendments previously allowed.

Finally, adding new defendants and claims would not unduly prejudice the defendants. "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). The

party opposing amendment has the burden of proving prejudice. *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2000).

The Greenberg Defendants have asserted that they would suffer prejudice from being required to defend against additional claims, and that the publicity associated with being sued for a Ponzi scheme is more harmful than the publicity of a fraudulent transfer suit.  However, reputational harm is not the type of prejudice that justifies denying leave to amend, and neither is the cost of having to defend against additional claims. *Salt Lake Tribune Publ'g Co. v. Mgmt. Planning, Inc.*, 2006 WL 3692660, at *2 (D. Utah Dec. 12, 2006) ("Management Planning essentially argues that it will suffer harm to its reputation if Tribune Publishing is allowed to allege fraud and harm to its pocketbook if it is forced to deal with an expanded complaint. Neither of these grounds are the type of prejudice that justify denying leave to amend.").  These inconveniences are simply an unfortunate, yet ordinary, byproduct of litigation, and they are not the type of disadvantages that constitute undue prejudice.

The main issue the Court considers is futility.  It is within the Court's discretion to deny a motion for leave to amend if it is futile. *Stripling*, 234 F.3d at 872-73.  To determine whether amendment would be futile, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* at 873 (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).  If claims are insufficiently stated, amendment would have no purpose.  Similarly, if the statute of limitations has already run against some of the defendants or with respect to any of the claims, amendment would be futile. *Whitt v. Stephens Cnty.*, 529 F.3d 278, 282 (5th Cir. 2008).

## I.  Failure to State Claims

The Court previously announced that it would dismiss 47 defendants, those against whom the Trustees made no allegations.  Both the Trustees and the Greenberg Defendants have filed

lists of these defendants. (Doc. No. 195; Doc. No. 197.) The Trustees have requested that 6353 Interests, Ltd. be removed from the list, because the Chart alleges that 6353 Interests, Ltd. received a transfer. The Court therefore lists the following 46 defendants as those against whom no allegations have been made:

> 324 Tropicana Interests, L.P.; 5020 Interests, Ltd.; 5803 Richmond, Ltd.; 6300 Interests, Ltd.; 6300 Investments, Inc.; 6906 Broadway Interests, LP; 9000 Interests, Ltd.; 9745 Interests, Ltd.; Almeda Interests, Ltd.; Ball Park II Joint Venture; Ben Dazzio; Ben Michael Medical Condominiums, LP; Brown/Kane, LLC; Bruce Badger; DB Interests, Inc.; D/D Interests, Ltd.; DG Interests, Ltd.; DG Realty, LLC; DG/DW Interests, Ltd.; Faith Brown Interests, G.P., LLC; Greenberg Interests, Inc.; HHT-FCP Limited 2; HHT-FCP Limited 3; Jeff Zemaitis; Joon Rhee; Juliet-Dominion Court, LP; Juliet-Silverwood, LP; Juliet Land Purchasing GP, LLC; Juliet Mortgage Partners, LP; Labyrinth Development, Inc.; LADF Holdings, LLC; Landcom Acquisition and Development Fund, LP; Main Hospital Development, LP; Main Hospital GP, LLC; Martin L. Kerns, II; Mattsam Ventures, LP; McKinley Shumate; Midtown Medical GP, LLC; Museum Medical Center, LLC; Reddy Interests, LLC; Robert Davis; Sheila Macdonald; The Vidal Group LLP; Thomas Cervone; TMAHC, Inc.; and Varma Investments, Ltd. (collectively, "Dismissed Defendants").

Adding any defendants against whom no specific facts have been pleaded would be futile. Claims against those defendants would be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Under Fed. R. Civ. P. 8(a)(2), which is applicable to all the claims except the actual fraud claim and the actual fraudulent transfer claims,[6] a plaintiff must plead "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the

---

[6] Because constructive fraudulent transfer can be proven without a showing of intent, the constructive fraudulent transfer claims are governed by Rule 8(a)(2) rather than Rule 9(b), which establishes a heightened pleading requirement for fraud. *Wahoski v. Classic Packaging Co. (In re Pillowtex Corp.)*, 427 B.R. 301, 310 (Bankr. D. Del. 2010). *See also E. Poultry Distrib., Inc. v. Yarto Puez*, 2001 WL 34664163, at *2 (N.D. Tex. 2001) ("If the fraudulent transfer statute Plaintiffs want the Court to apply requires intent to defraud, the enhanced pleading requirements of Rule 9(b) apply; if the statute allows for fraudulent transfer without intent to defraud, however, only the general pleading rules of Rule 8(a) must be satisfied.").

court to infer more than the mere possibility of misconduct."  556 U.S. ----, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  A cause of action that is not supported by *any* specific factual allegations does not survive the plausibility standard established in *Iqbal*.

The Second Amended Complaint does not show that the Trustees are entitled to relief against the Dismissed Defendants, against whom no facts are alleged.  Counsel for the Trustees admitted at the hearing that "there are not specific examples of what each Defendant did."  (Mot. to Am. Hr'g Tr. vol. 1, 10, July 2, 2010.)  Furthermore, because the allegations do not even meet Rule 8(a)(2)'s "short and plain statement" requirement, the allegations clearly fail to meet Rule 9(b)'s heightened pleading requirement, discussed below, for the actual fraud claim.

Under Rules 8(a) and 9(b), the Trustees may not proceed against any defendant without some specific factual allegations against that defendant.  A connection between a defendant and another party is not enough to associate that defendant with specific factual allegations pleaded against the other party.  Even an allegation that a defendant is controlled by a party that is known to have received transfers is not enough to state a claim.  *See Angell v. BER Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 751 (Bankr. E.D.N.C. 2009) (holding that, in a preferential transfer action, an allegation that the debtors were "subject to the dominion and control" of the principal owners of BER Care, Inc. "fail[ed] to give rise to a reasonable inference that the debtors transferred funds to BER Care, Inc.").

If the Dismissed Defendants were added to the lawsuit, all causes of action asserted against them would be dismissed for failure to state a claim.  Addition of those defendants would therefore be futile.  As the Court announced at the hearing, we deny leave to add these defendants.

With respect to all other defendants, the Court considers whether the facts alleged state a claim, and, if they do, whether amendment would otherwise be futile.

## II.  Federal-Law Fraudulent and Preferential Transfer Claims Against the New Defendants

The Trustees assert the existing fraudulent and preferential transfer claims under §§ 547 and 548 of the Bankruptcy Code against the new defendants.  The statute of limitations has already run on the §§ 547 and 548 claims, so adding those claims as to the new defendants would be futile unless either (i) the claims relate back or (ii) the limitations period should be equitably tolled.  The Court holds that the claims do not relate back and equitable tolling does not apply. We therefore deny leave to add the existing federal-law fraudulent and preferential transfer claims against the new defendants.

### A. Statute of Limitations in § 546(a)

The Trustees seek to assert fraudulent transfer and preferential transfer actions under §§ 547 and 548 of the Bankruptcy Code against the new defendants.  The statute of limitations for actions under §§ 547 and 548 is laid out in § 546(a) of the Bankruptcy Code.[7]  Section 546(a) states that:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
>> (1) the later of—
>>> (A) 2 years after the entry of the order for relief
>>> (B) 1 year after the appointment or election of the trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
>> (2) the time the case is closed or dismissed.

---

[7] Sections 547 and 548 limit the time to which the Trustee may look back in identifying avoidable transfers.  The Court is here concerned with the limitations period under § 546, which runs forward from the order for relief or the trustee appointment, rather than looking back.

Here, the limitations period ended on October 31, 2009, two years after the Court entered orders for relief in each of the three bankruptcy cases.

        The statute of limitations has already run on all § 547 and § 548 claims, so amending the complaint to add new defendants would be futile unless the claims would relate back to the original claims or unless the statute of limitations should be equitably tolled. *See Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.)*, 14 F.3d 1380, 1385 (9th Cir. 1994) ("Every court that has considered the issue has held that equitable tolling applies to § 546(a)(1). . . . We conclude that § 546(a)(1) is subject to equitable tolling in proper circumstances.").Because the amendment seeks to add new defendants, the original claims relate back against the new defendants only if the failure to add the new defendants was based on a mistake of identity. Fed. R. Civ. P. 15(c)(1)(C).

## B. Mistake of Identity--Generally[8]

        The claims against the new defendants would be timely if the amended pleadings related back to the Original Complaint. Fed. R. Civ. P. 15(c)(1)(C) allows an amended pleading to relate back to the date of the original pleading when:

> the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by the amendment:  (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The Supreme Court has explained that "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its

---

[8] The Court deals separately with William Marsh-Resco I, LP; Marquis Capital II Westcott, LP; Marquis Capital II, LLC; and Caroline Brown d/b/a Sorella Group.  The Trustees have dropped similarly named defendants William Marsh and Marquis Capital, and in the case of Caroline Brown, they seek to clarify the naming of the party.  As discussed below, the substitution of these defendants fits within the provisions of Rule 15(c)(1)(C).

timeliness in seeking to amend the pleadings." *Krupski v. Costa Crociere, S.p.A.*, 130 S. Ct. 2485, 2489-90, --- U.S. ---- (2010).

Although Rule 15(c)(1)(C) does not explicitly state that it applies only when there has been an actual mistake of identity, the requirement that the party sought to be added must have known that the action would have been brought against it "but for a mistake concerning the property party's identity" clarifies the application of the rule. The party could not know that the action would have been brought against it but for a mistake of identity unless there actually was a mistake of identity.

The Court here assumes without deciding that the claims against the new defendants satisfy the requirement of Rule 15(c)(1)(B) that "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" Regardless of whether the claims against the new defendants arise out of the same conduct, transaction, or occurrence, Rule 15(c)(1)(C) does not apply because the Trustees' mistake was not a mistake of identity.

United States District Judge Lee Rosenthal of the Southern District of Texas held in *Trigo v. TDCJ-CID Officials* that a plaintiff in a civil rights action had not made a mistake concerning the proper party's identity when he discovered that additional parties could be sued. 2010 WL 3359481, at *18 (S.D. Tex. Aug. 24, 2010).

The court stated:

> In the present case, there has been no such mistake [of identity]. The plaintiffs did not mistakenly sue party A instead of party B. Rather, the current defendants are prison medical personnel who treated Trigo. Trigo now alleges that, through discovery, he has learned about additional medical personnel who were also involved in denying him adequate medical care. This is not the type of "mistaken identity" that Rule 15 is intended to address. Instead,

> this is a purported lack of knowledge about additional parties who treated the plaintiff.

*Id.*

Under *Trigo*, an error based on a lack of knowledge rather than confusion about the identities of parties does not qualify as a mistake of identity under Rule 15. The realization that additional parties could have been sued is generally not a mistake of identity. Such an error is usually based on a *lack* of knowledge, not on mistaken knowledge about the identities of the parties.

Rule 15(c)(1)(C) is not intended to be used as a fall-back provision for a plaintiff who does not discover the identity of the defendant within the limitations period. As the court in *Trigo* noted, in the Fifth Circuit, "lack of knowledge of a proposed new defendant is not a 'mistake concerning the party's identity' within the meaning of Rule 15(c)." *Id.* at *18 (quoting *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998)). The Fifth Circuit has also held that Rule 15(c)'s mistake-of-identity provision does not apply to cases in which a plaintiff substituted a named defendant for a "John Doe" defendant. *Whitt*, 529 F.3d at 282-83; *Jacobsen*, 133 F.3d at 320. *See also Cox v. Treadway*, 75 F.3d 230, 240 (5th Cir. 1996) ("Substituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties.").

If the Trustees' failure to add the defendants earlier was based on a lack of knowledge, Rule 15(c)(1)(C)'s relation-back provision does not apply. The Court considers the Trustees' knowledge of the defendants only for the purpose of determining whether the Trustees' failure to add the defendants earlier was based on a mistake of identity. *See Krupski*, 130 S. Ct. at 2493-94 ("Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity.").

16 / 48

The evidence indicates that the Trustees were aware at the outset of the new defendants' relationship to the Debtors and the original defendants.   The Juliet Debtors' and Brown's interests in many of the new defendants were scheduled in their bankruptcy cases, and the Trustees mentioned the relationships in the Original Complaint.   Awareness of the existence of the other entity does not automatically preclude a mistake of identity.   *Krupski*, 130 S. Ct. at 2494.   However, the Trustees' discussion of the other entities within the Original Complaint itself shows that they were not only aware of the existence of many of the new defendants, but they had a reasonable understanding of the relationships among the Juliet Debtors, Brown, and the new defendants.

The Trustees did not mistakenly believe that the Juliet Debtors or Brown had taken actions that were actually taken by one or more of the new defendants.   By their own account, the Trustees became aware of additional transfers from the Juliet Debtors and Brown to the new defendants and then sought to add those parties.   (Mot. to Am. Hr'g Tr. vol. 2, 177-79, June 30, 2010, Doc. No. 185-1, at 91-93.)   They did not discover that they had been mistaken about which entities actually participated in the already-identified transfers.   The Trustees lacked knowledge about the alleged role of the new defendants, but they did not make a mistake regarding the proper party's identity.   The claims against the new defendants therefore do not relate back under Rule 15(c)(1)(C).

### C. Mistake of Identity—William Marsh-Resco I, LP

The Second Amended Complaint also seeks to remove William Marsh as a party and add William Marsh-Resco I, LP.   The attached chart alleges that William Marsh-Resco I, LP received two distributions from a Juliet Debtors' account.   The substitution of a closely related party that the plaintiffs realized would be a more appropriate party to sue is the type of mistake

of identity contemplated by Rule 15(c)(1)(C).  The Trustees made allegations against William Marsh in the Original Complaint, and the claims in the Second Amended Complaint meet Rule 15(c)(1)(B)'s requirement that "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"

In the Original Complaint, William Marsh is identified as an individual residing in Harris County, Texas.  The Original Complaint identifies Marsh as an investor in the Juliet Debtors and alleges that the named investors were paid from funds that had been obtained from "other pool participants and from monies not related to their respective Juliet Project Partnership."  (Orig. Compl. ¶ 80, Doc. No. 1, at 17.)  The Second Amended Complaint simply changes the name of the party.  The underlying allegations remain the same, and the claims against William Marsh-Resco I, LP are therefore based on the same transaction or occurrence as the claims against William Marsh in the Original Complaint.

The Trustees allege that the entity had notice of the Original Complaint and knew or should have known that it would have been sued but for a mistake of identity.  (Mot. to Am. ¶ 8, 11, Doc. No. 114, at 6, 8.)  No party denied the Trustees' allegations.  The Court finds that the claims against William Marsh-Resco I, LP relate back to the Original Complaint.  The Court therefore grants leave to add William Marsh-Resco I, LP as a defendant.

### D.  Mistake of Identity—Marquis Capital

The Second Amended Complaint seeks to remove Marquis Capital and to add Marquis Capital II Westcott, LP and Marquis Capital II, LLC.  The Original Complaint does not identify what type of entity Marquis Capital is, nor does it list Marquis Capital in the "Parties and Service" section.  The Second Amended Complaint changes the naming of the defendant by identifying the entities with greater specificity.  This change falls within the ambit of Rule

15(c)(1)(C).  The Trustees made allegations against Marquis Capital in the Original Complaint, and the claims in the Second Amended Complaint meet Rule 15(c)(1)(B)'s requirement that "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out— or attempted to be set out—in the original pleading[.]"

The Trustees allege that the entities had notice of the Original Complaint and knew or should have known that they would have been sued but for a mistake of identity.  (Mot. to Am. ¶ 8, 11, Doc. No. 114, at 6, 8.)   No party denied the allegations.  The requirements of Rule 15(c)(1)(C) are met, and the Court grants leave to add Marquis Capital II Westcott, LP and Marquis Capital II, LLC.

### E.  Mistake of Identity—Caroline Brown d/b/a Sorella Group

Finally, the Second Amended Complaint changes the naming of the defendant Caroline Brown.  The Original Complaint named "Caroline Brown" as a defendant, and the Second Amended Complaint names "Caroline Brown, both individually and d/b/a Sorella Group."  The Trustees seek simply to change the naming of an existing party, and this amendment therefore qualifies as a mistake of identity.  The Trustees made allegations against Caroline Brown in the Original Complaint, and the claims in the Second Amended Complaint meet Rule 15(c)(1)(B)'s requirement that "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"

The Trustees allege that Sorella had notice of the Original Complaint and that Sorella knew or should have known that it would have been added, but for the mistake of identity.  (Mot. to Am. ¶ 8, 11, Doc. No. 114, at 6, 8.)  No party denied the allegations.  The notice requirements

of Rule 15(c)(1)(C) have been met, and the amendment relates back.  The Court therefore grants

leave to amend.[9]

### F. Equitable Tolling

Because Rule 15's relation-back provision does not apply to most of the new defendants,

adding these new defendants to the original causes of action would be futile unless the statute of

limitations on the fraudulent or preferential transfer claims should be equitably tolled.    The

statute of limitations is simply an affirmative defense.  *IBT Int'l v. Northern (In re Int'l Admin.*

*Servs., Inc.)*, 408 F.3d 689, 701 (11th Cir. 2005).  As an affirmative defense, it is subject to

equitable considerations such as estoppel and waiver.  *Id.*   The statute of limitations under

§ 546(a)(1) of the Bankruptcy Code may be equitably tolled.  *Ernst & Young*, 14 F.3d at 1385.

Equitable tolling may apply when the defendants' active or passive concealment of assets

prevented the trustee from discovering the cause of action sooner.  *See Int'l Admin. Servs.*, 408

F.3d at 702 (allowing equitable tolling where the defendant actively or passively concealed

assets, and referring to the latter type of concealment as "negligent concealment").  If equitable

tolling is based on defendants' passive concealment of assets, the Trustees must have exercised

reasonable diligence to discover the fraud.[10]  *Id.*   In such situations, the statute of limitations

begins to run when the Trustee either acquired or should have acquired actual knowledge of the

---

[9] Of course, if Sorella is only a "d/b/a" for Caroline Brown, the Trustees do not need to add Sorella to the suit.  A trade name is not a separate legal entity capable of being sued.  *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 635 n.2 (4th Cir. 2002) ("It appears well settled that the use of a fictitious or assumed business name does not create a separate legal entity and that the designation d/b/a is merely descriptive of the person or corporation who does business under some other name.")  (quoting *Bauer v. Pounds*, 762 A.2d 499, 503 (Conn. 2000)).

[10] Citing Mississippi law, the Fifth Circuit suggested in *Boone v. Citigroup, Inc.* that even where the defendant has actively concealed the underlying conduct, the plaintiff may have to show due diligence:  "Appellants bear the burden of establishing fraudulent concealment by showing both (1) an affirmative act to conceal the underlying tortious conduct, and (2) a failure to discover the factual basis for the claims despite the exercise of due diligence." 416 F.3d 382, 391 (5th Cir. 2005).  The court in *Boone*, however, relied on a Mississippi statute that allowed tolling of a statute of limitations where the defendant fraudulently concealed the cause of action.  Miss. Code. § 15-1-67. The Court here applies federal common law regarding equitable tolling, which does not require a showing of diligence where the plaintiff shows active concealment.

existence a cause of action.  *Id.*  If the defendants actively concealed the transfers, the statute of limitations does not begin to run until the Trustees gained actual knowledge of the transfers.  *Id.*

In a fraudulent transfer action in a bankruptcy case, equitable tolling is typically based on the conduct of the Debtors rather than the defendants.  *Moratzka v. Pomaville (In re Pomaville)*, 190 B.R. 632, 637 (Bankr. D. Minn. 1995).  Although basing equitable tolling on the Debtors' conduct may seem unfair to the defendants, "unlike the usual civil case where a plaintiff at least has the advantage of being a party to the underlying transaction, a bankruptcy trustee must rely almost entirely on a third party (the debtor) to provide the information necessary to uncover avoidable transfers."  *Id.*

### 1.  Active Concealment

The Debtors and defendants are alleged to be closely related entities, and the Trustees assert that both the Debtors and defendants actively concealed the transfers.  However, there is insufficient evidence to support a finding that the Debtors or any defendant actively concealed transfers.

Active concealment "consist[s] of affirmative acts or representations which are calculated to, and in fact do, prevent the discovery of the cause of action."  *Int'l Admin. Servs.*, 408 F.3d at 701.  The Trustees' Brief alleges that "some of the defendants actively deceived Trustees by deleting computer files, neglecting to turn over all of the Debtors' property, and not fully disclosing transfers of the Debtors' property to creditors and insiders on the Debtors' schedules and statements."  (Trustees' Post-Hr'g Br. ¶ 4, Doc. No. 198, at 2.)  Although there is evidence that the Debtors failed to disclose transfers and to provide complete records, there is insufficient evidence to establish active concealment.

The Court does not consider paragraphs 11-23 of the Trustees' Post Trial Brief nor Exhibit A. These paragraphs cite documents that were not admitted into evidence during the hearing. There is insufficient evidence in the record to demonstrate active concealment through the deletion of computer files. Theresa Mobley commented on the alleged deletion of computer files at the hearing. However, the Court sustained opposing counsel's objections to the admissibility of much of her testimony about the alleged file deletion. The only admissible evidence on the deletion of computer files was an ambiguous statement from Mobley that "we determined there were records missing, records deleted by—we are still in the process of identifying what was deleted and who was deleted." (Mot. to Am. Hr'g Tr. 118, June 30, 2010, Doc. No. 185-1, at 32.)

Mobley's statement is insufficient evidence of active wrongdoing. The Trustees also did not provide sufficient evidence that the Debtors' alleged failure to disclose transfers and to produce complete records was active, rather than passive, concealment. The Court therefore cannot equitably toll the statute of limitations on the basis of active concealment.

### 2. Extraordinary Circumstances

The statute of limitations can be equitably tolled if the Trustees were delayed by passive concealment or by extraordinary circumstances. *Int'l Admin. Servs.*, 408 F.3d at 700. In either case, the Trustees would have to show that, despite the exercise of due diligence, they could not have discovered the claims earlier.

Extraordinary circumstances were not the cause of the Trustees' delay. Aside from the defendants' alleged misconduct, the only extraordinary circumstance the Trustees cite is the death of Jim Smith, the Trustees' forensic accountant, in July 2009. (Mot. to Am. Hr'g Tr. vol. 2, 120, June 30, 2010, Doc. No. 185-1, at 34.)

The Court finds that Smith's death was not the main cause of the delay in adding the new defendants. Smith's death in July 2009 occurred after the Trustees had already subpoenaed the Bank of America records. Although Smith's death may have impaired the Trustees' ability to review the records that were in Smith's possession, the real cause of the delay in adding the new defendants and new causes of action was that the Trustees did not have the Bank of America records until November 2009. Jim Smith's death therefore was not the primary cause of the Trustees' inability to add the new defendants within the limitations period, and it is not a circumstance justifying equitable tolling.

### 3. Passive Concealment

Passive concealment could justify equitable tolling. The Juliet Homes' Statement of Financial Affairs failed to list some of the transfers the Trustees allege took place within the 90 days preceding the bankruptcy filings. (No. 07-36424, Doc. No. 111-5, at 1-8. *Compare to* Transfer Chart, Doc. Nos. 114-2, 114-3, 114-4.) The number of omitted transfers is not enough to establish active concealment, and the Transfer Chart does not indicate whether many of the omitted transfers actually came from a Juliet Homes' account. (*See, e.g.*, Transfer Chart, Doc. No. 114-2, at 2 (listing a $4,000.00 transfer to Bernie Kane on July 12, 2007, but providing no information about the account from which the money was allegedly transferred) and at 6 (listing two transfers to Caroline Brown within the 90 days preceding bankruptcy, but providing no information about the account from which the money was allegedly transferred.)

The Trustees allege, however, that some transfers clearly identified as coming from a Juliet Homes account took place within the 90 days preceding bankruptcy and were not disclosed on the Statement of Financial Affairs. (*See, e.g.*, Transfer Chart, Doc. No. 114-3, at 1

(identifying three transfers to Doug Brown, in the amounts of $3,300.00, $15,000.00, and $15,015.00, on August 10, 2007.) The alleged omissions are evidence of passive concealment.

The Trustees have also shown through testimony that the Debtors' incomplete records made it difficult to discover the additional defendants and causes of action before the expiration of the statute of limitations. Although the Trustees have not established active concealment, the Debtors failed to produce financial records that would have given the Trustees necessary information about the relationship between the Debtors and TMOC.

The Trustees have provided sufficient evidence of passive concealment. Under either a passive concealment or extraordinary circumstances theory, the Trustees have to show that they exercised diligence. However, as set forth below, the Trustees have not shown that they exercised sufficient diligence.

### 4. Diligence

Diligence is measured by an objective standard. *Markus v. Fried (In re Geneva Steel LLC)*, 389 B.R. 231, 240 (Bankr. D. Utah 2008). The Court must determine whether the Trustees discovered or should have discovered that the alleged fraud occurred, but nonetheless failed to file a timely suit. *Id.* In a fraudulent transfer case, courts consider whether the bankruptcy trustee had "inquiry notice" of the alleged fraudulent transfer. *Id.* Inquiry notice consists of "sufficient storm warnings to alert a reasonable person to the possibility that there were either misleading statements or significant omissions" involved in a transfer. *Sterlin v. Biomune Systems*, 154 F.3d 1191, 1196 (10th Cir. 1998).

The Court considers (i) when the Trustees had inquiry notice of the alleged facts underlying the claims against the new defendants and (ii) whether investigation at that time would have allowed the Trustees to discover the claims before the limitations period had run. If

the underlying facts should have been discovered before the limitations period had ended, equitable tolling is not appropriate. *Id.* at 1201.

The fact that the Trustees could certainly have done more in pursuing the claims does not automatically defeat their argument for equitable tolling. However, the Trustees failed to take further investigative measures when it became apparent that they needed additional information. The Debtors' bankruptcy filings provided some evidence of the relationship between the Debtors' and TMOC. Juliet Homes' Statement of Financial Affairs showed four payments to TMOC in July and September of 2007, in the total amount of $74,250.00. (No. 07-36424, Doc. No. 111-5, at 5, 8.) At the same time, Brown's Schedule B listed a 51% interest in TMOC, which he valued at "zero." (No. 07-36422, Doc. No. 56, at 20.)

At least as early as August 2008, Steve Smith, Trustee for Brown's bankruptcy estate, suspected that TMOC was Brown's alter ego, as he alleged in his Discharge Complaint against Brown. (Discharge Compl. ¶ 14, No. 08-03320, Doc. No. 1, at 7-8.) Smith alleged in the Discharge Complaint that Brown owned a majority interest in TMOC and caused TMOC to transfer two parcels of real property to his counsel. (Discharge Compl. ¶ 14, No. 08-03320, Doc. No. 1, at 7-8.) Smith also alleged in the Discharge Complaint that Juliet Homes made transfers to TMOC and that Brown was unable to explain why the transfers occurred or to account for where the money went. (Discharge Compl. ¶ 20-22, No. 08-03320, Doc. No. 1, at 12.)

Smith therefore had notice in August 2008, over a year before the statute of limitations had run on the fraudulent and preferential transfer claims, that the Juliet Debtors had transferred funds to an entity that may have been an alter ego of Brown. Moreover, although Juliet Homes disclosed that it had transferred $74,250.00 to TMOC in the 90 days preceding bankruptcy, Brown had stated that his interest in the company had a value of zero. These facts ought to have

25 / 48

alerted Smith that it was necessary to investigate TMOC and obtain TMOC's financial records. Because all these facts were either stated in Brown's bankruptcy filings or alleged in Smith's Discharge Complaint against Brown, Hill (who would have been expected, in a diligent investigation into the Juliet Debtors' alleged transfers, to read Smith's allegations against the Juliet Debtors' managing partner) also had notice of the alleged relationship between Brown and TMOC.

The Trustees had "sufficient storm warnings" that they needed to seek additional information about the relationship between TMOC and the Debtors and to investigate possible transfers among the entities. However, the Trustees did not subpoena the Debtors' and Brown's bank records until June 25, 2009. June 25, 2009 was the 603rd day after entry of the order for relief in the three bankruptcy cases. The Trustees only had 730 days to bring the claims. 11 U.S.C. § 546.

At the evidentiary hearing, the Trustees focused on their difficulties that arose between June 25, 2009 and October 31, 2009. That is the wrong focus. The Court does not believe that the 602 day lapse has been adequately explained.

It is also critical to the Court's analysis that the Trustees failed to contact the Debtors' accountants. (Mot. to Am. Hr'g Tr. vol. 2, 137, July 2, 2010, Doc. No. 177-1, at 66; Mot. to Am. Hr'g vol. 2, 186, July 2, 2010, Doc. No. 177-1, at 115.) Although Miller Grossbard was listed on Juliet Homes' Statement of Financial Affairs as the Debtor's accountant, the Trustees did not contact Miller Grossbard, which also had TMOC's records. (Mot. to Am. Hr'g Tr. vol. 1, 39, July 2, 2010, Doc. No. 177, at 39.) Miller Grossbard had prepared tax returns for various Juliet entities, including TMOC. (Mot. to Am. Hr'g Tr. vol. 2, 140-41, July 2, 2010, Doc. No. 177-1, at 69-70.) Miller Grossbard also had copies of the QuickBooks ledgers kept by the Juliet

Debtors and TMOC.  (Mot. to Am. Hr'g Tr. vol. 2, 191-92, July 2, 2010, Doc. No. 177-1, at 120-21.)

The Trustees argue that their failure to contact Miller Grossbard was excusable.  The Trustees knew that Miller Grossbard's records had come from the Debtors, and they therefore assumed that Miller Grossbard's records would be identical to those the Trustees received from the Debtors.  (Trustees' Post-Hr'g Br. ¶ 43-45, Doc. No. 198, at 12-14.)  The evidence on the record does not establish when or whether the Trustees had notice that any of the Debtors' records had been deleted.  However, regardless of whether the Trustees knew that records had been deleted, once the Trustees had "storm warnings" of potential fraudulent transfers, they were on notice that the records the Debtors had provided may have been incomplete or inaccurate.  Even if the Trustees erroneously suspected that Miller Grossbard's records were unlikely to contain additional information, the possibility that the accountants' records were more complete was significant enough to warrant the obvious step of contacting Miller Grossbard.

But the Trustees never contacted Miller Grossbard, and they did not subpoena the Bank of America records for TMOC, Brown, and the Juliet Debtors until June 25, 2009.

Bank of America produced the first round of documents by early August.  Mobley testified that Bank of America first produced documents without a record of checks, and she reviewed the initially produced documents in early August.  (Mot. to Am. Hr'g Tr. vol. 1, 35-36, July 2, 2010, Doc. No. 177, at 35-36.)  Bank of America produced all the TMOC, Brown, and Juliet checks by early November 2009.  (Mot. to Am. Hr'g Tr. vol. 1, 21, July 2, 2010, Doc. No. 177, at 35-36.)  On the basis of the documents they received from Bank of America in November 2009, the Trustees concluded that the new causes of action and new defendants ought to be added.

Had the Trustees subpoenaed the Bank of America records in August 2008, when Smith was already aware of the relationships among the entities, the Trustees would have discovered the alleged facts underlying the new causes of action and the alleged involvement of the new defendants within the limitations period. Similarly, the Trustees would have received a more complete account of the Juliet Debtors' and TMOC's finances if they had contacted Miller Grossbard at the time they were put on notice of potential fraudulent transfers.

Additional information about the Juliet Debtors' finances, including the relationship between the Juliet Debtors and TMOC, was both necessary to the trustees' investigation and available with the exercise of sufficient diligence. But the Trustees failed to obtain information either from Miller Grossbard or from Bank of America. Either failure, standing alone, would constitute a lapse in reasonable diligence. Taken together, the two lapses firmly establish that the Trustees did not act with sufficient diligence in pursuing the claims. Equitable tolling therefore is not justified.

## III.  State-Law Fraudulent Transfer Claim Against the New Defendants

The Trustees also seek to add the existing state-law actual and constructive fraudulent transfer claims against the new defendants. The Trustees, standing in the shoes of the creditors, assert the claims pursuant to their avoidance power under § 544 of the Bankruptcy Code. Like the federal-law fraudulent and preferential transfer claims, the claims are barred by the Bankruptcy Code's limitations period under § 546. Some of the claims are not barred under Texas law, but the Trustee is not empowered under § 544 to bring state-law fraudulent transfer actions against any new defendants except those added under Rule 15(c)(1)(C)..

As long as the state-law statute of limitations had not run on the claims at the beginning of the bankruptcies, the Trustees are empowered to bring the claims. *Smith v. Am. Founders Fin. Corp.*, 365 B.R. 647, 679 (S.D. Tex. 2007).

The state-law fraudulent transfer claims were likely viable at the commencement of the bankruptcy cases. The statute of limitations for a claim under § 24.006(b) is only one year from the time of the transfer. Tex. Bus. & Com. Code § 24.010(a)(3). However, the statute of limitations on an actual fraudulent transfer claims under Tex. Bus. & Com. Code § 24.005(a)(1) is four years after the transfer or, if later, within one year of the time the transfer was or could reasonably have been discovered. Tex. Bus. & Com. Code § 24.010(a)(1). For constructive fraudulent transfer claims brought under §§ 24.005(a)(2) or 24.006(a), the statute of limitations is four years after the transfer. Tex. Bus. & Com. Code § 24.010(a)(2). The Trustees allege that transfers took place within these limitations periods. (*See* Transfer Chart, Doc. Nos. 114-2, 114-3, and 114-4.) Although some of the transfers may have fallen outside the limitations period, the Court assumes without deciding that the claims were viable at the commencement of the bankruptcy cases.

However, the Bankruptcy Code's limitations period on the Trustees' avoidance actions also applies to the state-law fraudulent transfer claims. When a trustee asserts an avoidance action under state law, pursuant to the avoidance power under § 544 of the Bankruptcy Code, the trustee is bound by the Bankruptcy Code's limitations period under § 546. 11 U.S.C. § 546(a). *See Smith.*, 365 B.R. at 675. Under Texas law, the Court looks back to determine whether the alleged transfers were sufficiently recent. The § 546 limitations period, on the other hand, is independent of the time of the transfers. Here, the § 546 period ran forward from October 29, 2007, the date of the entry of the order for relief.

The limitations period in § 546 is a double-edged sword for the trustee.  If, at the beginning of a bankruptcy proceeding, a state-law fraudulent transfer claim is viable, then the trustee has two years to bring the claim—regardless of whether the claim is still viable under state law by the time the trustee brings the action.  *Id.*  The § 546 limitations period usually operates to give the trustee "breathing room" to bring a claim even after the state-law limitations period has ended.  But § 546 sometimes—as in this case—bars claims that would otherwise be viable under state law.  *Krigel v. Nobel (In re Am. Energy Trading, Inc.)*, 291 B.R. 159, 166 (Bankr. W.D. Mo. 2003) (holding that a trustee's fraudulent transfer under Missouri law was time-barred under § 546, even though the four-year Missouri limitations period had not yet ended); *Bergquist v. Vista Dev., Inc. (In re Quality Pontiac Buick GMC Truck, Inc.)*, 222 B.R. 865, 869 (Bankr. D. Minn. 1998) (holding that a fraudulent transfer claim under Minnesota law was barred under § 546, despite the claim's viability under Minnesota's six-year statute of limitations).  As the court in *Bergquist* put it,

> A trustee's action applying state fraudulent transfer law is brought "under" § 544, because without the specific empowerment of the statute the trustee would lack standing.  By its very terms, then, § 546(a) requires actions commenced with the empowerment of § 544 to be brought by its deadlines.

*Id.*  The Trustees here bring the claims under the authority of § 544, and they are bound by the limitations in § 546, regardless of what Texas law allows.  *See Am. Energy Trading*, 291 B.R. at 166 ("[E]ven though the Trustee's allegations are brought as fraudulent transfers under the Missouri statutes, they are nevertheless brought under the authority conferred on her by § 544(b).").

The plain language of § 546 bars the claims.  The text of § 546 contains no exceptions to the limitations period, nor does it contain any implication that a state-law statute of limitations

may extend the two-year period after the entry of the order for relief.  The application of the § 546 limitations period to state-law fraudulent transfer claims is not unusual, and the absence of any provision allowing the extension of the two-year period should be presumed to be intentional.  In 11 U.S.C. § 108(a), which governs the trustee's ability to bring actions owned by the debtor, the Code explicitly extends the limitations period to *the later of*  (1) the end of the limitations period under applicable nonbankruptcy law, or (2) two years after the order for relief. But when the trustee stands in the shoes of the creditors and brings an avoidance action under § 544, the limitations period is defined by § 546(a).  The similar text of § 546(a) incorporates no such deference to nonbankruptcy-law limitations periods.

The Court denies leave to add the state-law fraudulent transfer claims against any new defendants except William Marsh-Resco I, LP; Marquis Capital II Westcott, LP; Marquis Capital II, LLC; and Sorella Group.  The Bankruptcy Code's limitations period for avoidance actions ended on October 29, 2009, and amendment would be futile as to any other new defendant.

## IV.  New Cause of Action for Conversion

The Second Amended Complaint expands the Original Complaint's unjust enrichment cause of action by adding conversion and misappropriation-of-assets theories.  (Second Am. Compl. ¶¶ 221-28, Doc. No. 114-1, at 36-38.)  The Second Amended Complaint states a claim for conversion/misappropriation/unjust enrichment and for punitive damages, and these claims relate back to the date of the Original Complaint as to the original defendants.

The conversion claim would be futile against the new defendants.  The statute of limitations has run on the conversion/misappropriation/unjust enrichment cause of action, and the claim does not relate back.

## A. Against the Original Defendants

The conversion claim against the original defendants relates back to the date of the Original Complaint, and amendment would not be futile.  If an amendment "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," then the amendment "relates back to the date of the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B).  Any claims against the original defendants that relate back to the original pleadings would not be barred by the statute of limitations.

The Court allows the Trustee to add causes of action for conversion/misappropriation of assets/unjust enrichment and punitive damages against the original defendants.  The conversion claim, at least with respect to the original defendants, relies on the same conduct, transaction, or occurrence set out under the unjust enrichment cause of action in the Original Complaint.  The conversion, misappropriation, and unjust enrichment theories are all based on the allegation that Juliet's investors received assets that should have remained in the bankruptcy estate.  The claim therefore relates back under Rule 15(c)(1)(B).  Amendment to allow the conversion/misappropriation of assets/unjust enrichment claim against the original defendants would not be futile.

## B. Against the New Defendants

The conversion/misappropriation/unjust enrichment claim is barred against the new defendants.  Under Texas law, "a person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues."  Tex. Civ. Prac. & Rem. Code § 16.003(a).  The statute of limitations for conversion also applies to unjust enrichment claims.

*Verizon Emp. Benefits Comm. v. Frawley*, 655 F. Supp. 2d 644, 647-48 (N.D. Tex. 2008);
*Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 869-71 (Tex. 2007).

The limitations period established by 11 U.S.C. § 108(a) has ended.  Under 11 U.S.C.
§ 108(a), claims belonging to a bankruptcy estate may not be brought after the later of (1) the
limitations period established by applicable nonbankruptcy law, including any suspension of the
period occurring on or after the commencement of the case; or (2) two years after the order for
relief.

Both the Texas-law limitations period and the two-year period following the order for
relief have ended, so the claim is barred unless the amended pleadings relate back to the date of
the Original Complaint or the statute of limitations is equitably tolled.  As explained above in
Part II.B-E, the claims do not relate back under Fed. R. Civ. P. 15(c)(1)(C) as to any new
defendants except William Marsh-Resco I, LP; Marquis Capital II Westcott, LP; Marquis Capital
II, LLC; and Sorella Group.  The Trustees also are not entitled to equitable tolling of the statute
of limitations.  Part II.F, *supra*.

The Court grants leave to add the conversion/misappropriation/unjust enrichment claim
as to William Marsh-Resco I, LP; Marquis Capital II Westcott, LP; Marquis Capital II, LLC; and
Sorella Group.  The conversion/misappropriation/unjust enrichment claim is barred as to all
other new defendants, and amendment would be futile.

## V.  New Fraud Claims

The Trustees seek to add new claims for actual and constructive fraud against all
defendants.  However, the Trustees state claims for actual and constructive fraud against only a
few defendants.

## A. Actual Fraud

The Trustees' actual fraud claim is governed by Fed. R. Civ. P. 9(b), which establishes a heightened pleading requirement for fraud.  Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud.  Fed. R. Civ. P. 9(b).  *See Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (upholding district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. Feb. 16, 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentation).  "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).  Where an ongoing scheme is alleged, the specificity requirements are somewhat relaxed.  *See U.S. ex rel Thompson v. Columbia/HCA Healthcare Corp.*, 20 F. Supp. 2d 1017, 1039, 1049 (S.D. Tex. 1998) (holding that plaintiff had pleaded fraud with sufficient particularity and acknowledging that "courts have consistently found that where allegations of fraudulent conduct are numerous or take place over an extended period of time, less specificity is required").

The elements of actual fraud under Texas law are:  (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the

representation; and (7) the representation caused the plaintiff injury.  *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citing *Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).  In order to satisfy the heightened pleading standard of Rule 9(b), a plaintiff must plead each element with particularity.  *Id.*

The Trustees' fraud claims assert that the defendants defrauded the Brown Estate, the Juliet Estate, and the estates' creditors:  "As a result of the fraud, transfers and payments, the Brown Estate, the Juliet Estate and their creditors were damaged."  (Second Am. Compl. ¶ 221, Doc. No. 114-1, at 36.)  The Trustees do not have standing to assert fraud claims for injuries to the Debtors' creditors.  The Trustee may assert only those claims that belong to the bankruptcy estate, not claims that belong to the creditors individually.  *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum)*, 522 F.3d 575 (5th Cir. 2008); *Amazing Enters. v. Jobin (In re M & L Bus. Mach. Co.)*, 136 B.R. 271, 275 (Bankr. D. Colo. 1992).  Property of the bankruptcy estates includes all of the Debtors' legal and equitable interests as of the commencement of the case.  11 U.S.C. § 541(a)(1).  Whether a particular state-law claim belongs to the bankruptcy estate depends on whether, under applicable state law, the debtor could have raised the claim as of the commencement of the case.  *Seven Seas Petroleum*, 522 F.3d at 584.

The Debtors could not have raised any fraud claim that alleges an injury to an individual creditor.  Fraud claims that rely on particular and distinct injuries to individual creditors belong to those individual creditors.  *M & L Bus. Mach. Co.*, 136 B.R. at 276 (holding that individual plaintiffs, not the bankruptcy trustee, had standing to pursue fraud claims where the plaintiffs' claims were "based on particular and distinct injuries to each of them which must be proven

individually for the collection of damages"). *See also Seven Seas Petroleum* ("[I]f a cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate.") (citing *Schertz-Cibolo-Universal City, Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Trust)*, 25 F.3d 1281, 1284 (5th Cir. 1994)). The Trustees therefore have standing to assert generalized injuries to the Debtors' estates, but they do not have standing to assert particularized fraud claims on behalf of individual creditors. "The standing limitation eliminates bankruptcy asset distribution problems which may arise when creditors who were not injured by actions of third parties are able to receive the benefit of the trustee's recovery." *M & L Bus. Mach. Co.*, 136 B.R.. at 276.

Because the Trustees may not assert fraud claims on behalf on individual creditors, the Court's determination of whether the Trustees have stated a claim for fraud under Rule 9(b) must be based only on those pleaded facts that would support the estates' claim for fraud. The Trustees may not use allegations of injuries against individual creditors to support the estates' claim. Nor may the Trustees rely on allegations of misrepresentations made to creditors or to any entities other than the Debtors. If the Second Amended Complaint does not allege fraud against the Debtors, then the Trustees' amendment would be futile.

In the section laying out the fraud/conspiracy/aiding and abetting claim, the Trustees assert that "the conduct of Investors as discussed hereinabove constitutes fraud (actual and/or constructive), conspiracy to commit fraud and/or aiding and abetting in such fraud and conspiracy." (Second Am. Compl. ¶ 221, Doc. No. 114-1, at 36.) The Court therefore examines the factual allegations in the rest of the Second Amended Complaint to determine whether the Trustees have stated an actual fraud claim with particularity. Because the Trustees do not have

standing to assert the creditors' claims, the Trustees may assert only those claims based on misrepresentations *to at least one of the Debtors*.  The Second Amended Complaint alleges such misrepresentations.  For example, paragraph 187 alleges:

> Warren King . . . of Pinnacle Title handled all closings and received fees ranging from $1,500 to $3,000 per transactions in most if not all real property sale and loan closings involving Juliet. King authorized disbursements of monies to fictitious lienholders using sale and loan proceeds to which Juliet was entitled . . . . King drafted and amended HUD-1 settlement statements in accordance with instructions to divert monies to Brown, Investors, and other co-conspirators.

Paragraph 192 alleges:

> Brown, Caroline Brown, Thomas Boyd, and First Texas Residential "approved" borrowers for mortgage loans by overstating income and misrepresenting the source of funds to be used for down payments.  After originating the loans, First Texas Residential immediately sold the notes and deeds of trust to secondary market investors . . . .  However, the subprime collapse in the summer of 2007 caused the secondary market to shut down which, in turn, resulted in the inability of First Texas Residential to sell its toxic mortgage loans . . . .  Consequently, Juliet lost its primary source of financing for its homebuyers which decimated its sales and caused its financial condition to rapidly decline.

(Doc. No. 114-1, at 25-26.)  In paragraph 188, the Second Amended Complaint alleges that First Texas Residential[11] was owned and controlled by Doug Brown, Caroline Brown, and Thomas Boyd, and that it "originated most if not all of the mortgage loans in the sales of Juliet's properties."  (Doc. No. 114-1, at 23.)

Each of these portions of the Second Amended Complaint alleges materially false statements.  The defendants are alleged to have known the statements were false and to have intended that the Juliet Debtors would act on the false representations.  Finally, the Juliet

---

[11] First Texas Residential is a business name for Broyd, Inc., which was named as a defendant in the Original Complaint.

Debtors, acting in accord with Brown (Second Am. Compl. ¶ 179, Doc. No. 114-1, at 19), are alleged to have acted in reliance on the false statements.  Each false statement is alleged to have caused the Juliet Debtors injury.  Although the exact time of the statements is not identified, the Trustees allege an ongoing scheme and state sufficient information about the speaker, context, and content of the false statements to give the defendants fair notice.  *See Thompson*, 20 F. Supp. 2d at 1049 (holding that the plaintiff pleaded fraud with sufficient particularity when he alleged the framework of a fraudulent scheme without listing specific false claims and dates).  The Second Amended Complaint thus states a claim for actual fraud against Warren King, Caroline Brown, Thomas Boyd, and First Texas Residential.[12]

Although Warren King, Caroline Brown, Thomas Boyd, and First Texas Residential may have an *in pari delicto* defense available to them,[13] the Court will not dismiss the claims on the basis of *in pari delicto*.  The Trustees have stated a fraud claim against these defendants, and *in pari delicto* cannot independently defeat the Trustees' standing to raise a claim.  *Hill v. Day (In*

---

[12] Two other portions of the Second Amended Complaint allege facts that come close to stating a claim for actual fraud on the Juliet Debtors, but the Trustees do not allege those facts against any named defendant.  Paragraph 194 alleges that "individuals, affiliate entities, insiders and 'preferred investors'" acquired money "through the use of false invoices to Juliet from fictitious vendors, contractors, and subcontractors for services that were never actually performed and/or supplies that were never purchased.  Such companies include a nonexistent stonework company and a design firm allegedly owned by Connie Brown, Brown's mother."  This paragraph does not sufficiently allege that Connie Brown even knew about the submission of the invoices, much less that she knew they were false or made the representations recklessly.  Furthermore, without identifying the individuals or entities who submitted the false invoices, the paragraph does not state the fraud claim with sufficiently particularity under Rule 9(b).  *See Sullivan*, 600 F.3d at 551 ("To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'").

Paragraph 197 would be sufficient to state a fraud claim on the part of the Juliet Debtors against Doug Brown:  "Brown used Juliet Purchasing Services to place purchase orders for all building materials, and would then bill Juliet for the actual cost plus 10% . . . .  The resulting inflation of Juliet's building costs effectively reduced its bottom line[.]"  However, the Second Amended Complaint removes Doug Brown as a defendant, and the facts alleged do not state a claim against any other defendant.  The Court will allow the Trustees to replead these allegations to state a claim against named defendant.

[13] "The equitable defense of *in pari delicto*, which means 'in equal fault', is based on the common law notion that a plaintiff's recovery may be barred by his own wrongful conduct."  *Howard v. Fid. & Deposit Co. of Md. (In re Royale Airlines, Inc.)*, 98 F.3d 852 (5th Cir. 1996).

*re Today's Destiny, Inc.)*, 388 B.R. 737, 746 (Bankr. S.D. Tex. 2008), *cited with approval in Floyd v. CIBC World Markets, Inc.*, 426 B.R. 622, 642 (S.D. Tex. 2009). "In the bankruptcy context, the Trustee's standing is a claim *ownership* issue. The question is whether a claim is 'property of the estate' or a claim that only a creditor can bring on the creditor's own behalf." *Id.* As the Fifth Circuit has noted, "That the defendant may have a valid defense on the merits of a claim brought by the debtor goes to the resolution of the claim, and not to the ability of the debtor to assert the claim." *In re Educators Grp. Health Trust*, 25 F.3d at 1286.

The Trustees have not, however, pleaded actual fraud with respect to any defendant against whom nothing has been alleged except that the defendant received a transfer. In a case involving multiple defendants, the party asserting the fraud claim must make specific allegations against each defendant. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (dismissing claims against defendants where "the complaint [was] shot through with general allegations that the 'defendants' engaged in fraudulent conduct but attribute[d] specific misconduct only to KPMG and B & W."). The plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme. *Id.* at 765.

The Trustees have not done so here. Although the Second Amended Complaint describes the particular conduct of some individuals and entities, the Second Amended Complaint fails to allege any role that most of the named defendants played in the alleged actual fraud. The Second Amended Complaint and the attached Transfer Chart allege that defendants received transfers from the Debtors. However, an allegation that a defendant has received a fraudulent transfer is

not enough to state an actual fraud claim with particularity.  Receipt of a fraudulent transfer does not in itself satisfy any of the elements of an actual fraud claim under Texas state law, and those elements must be pleaded with particularity under Rule 9(b).  Although the facts in the Second Amended Complaint state an actual fraud claim against some defendants, the Trustees have not stated a fraud claim against any defendant who is alleged merely to have received transfers.  The general statement that all defendants either participated or aided and abetted the alleged fraud is not enough to elevate an allegation of fraudulent transfer to an allegation of actual fraud under Rule 9(b).

### B. Constructive Fraud

The Trustees also allege constructive fraud.  (Second Am. Compl. ¶ 221, Doc. No. 114-1, at 36.)  Under Texas law, "[c]onstructive fraud is the breach of a legal or equitable duty which the law declares fraudulent because it violates a fiduciary relationship."  *Tex. Integrated Conveyor Syst. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366 (Tex. App.—Dallas 2009, pet. denied).  A cause of action for constructive fraud is often identical to a cause of action for breach of fiduciary duty.  *See Welder v. Green*, 985 S.W.2d 170, 175 (Tex. App.—Corpus Christi 1998, pet. denied) ("In the context before us, constructive fraud and breach of fiduciary duty amount to identical causes of action.").  With constructive fraud, the actor's intent is irrelevant.  *Tex. Integrated Conveyor Syst.*, 300 S.W.3d at 366 (citing *Barnett v. Barnett*, 67 S.W.3d 107, 126 (Tex. 2001)).  Because constructive fraud does not require proof of *scienter*, Rule 9(b)'s heightened pleading requirements do not apply, and the pleading of a constructive fraud claim must only comply with Rule 8(a).  *SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 319 (Bankr. S.D.N.Y. 1999).

Under Rule 8(a), to state a plausible claim for constructive fraud against any particular defendant, the Trustees must allege the existence of some special relationship between that defendant and one of the debtors.  *See Welder*, 985 S.W.2d at 175 (stating that constructive fraud "require[s] the existence of some special relationship") (citing *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964)).  The duty may be either a formal fiduciary duty or an informal fiduciary duty.  "An informal fiduciary duty may arise from a moral, social, domestic or purely personal relationship of trust and confidence, generally called a confidential relationship." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998).  The relationship must exist prior to, and apart from, the transaction that is the basis of the suit.  *See id.* at 288.  The Trustees must also allege a breach of trust.  *Welder*, 985 S.W.2d at 175.

An allegation of a formal fiduciary duty would support a claim for constructive fraud.  A general partner in a limited partnership, for example, owes fiduciary duties to the partnership and to the limited partners.  Tex. Bus. Orgs. Code §§ 153.152(a), 152.204(a); *Hughes v. St. David's Support Corp.*, 944 S.W.2d 423, 425-26 (Tex. App.—Austin 1997, writ denied).  The Trustees do not allege that any of the defendants were general partners of the Juliet Debtors.  According to the Second Amended Complaint, Brown testified that Juliet GP was the general partner for Juliet Homes and that Brown held 100% of the stock of Juliet GP.  But the Trustees are not attempting to sue Juliet GP for violating its fiduciary duties to Juliet Homes, and Brown is no longer listed as a defendant in the Second Amended Complaint.

However, the Trustees do allege that a few of the listed defendants were limited partners of Juliet Homes.  (Second Am. Compl. ¶ 172, Doc. No. 114-1, at 17.)  The Second Amended Complaint lists Bernie Kane, Malladi Reddy, Melissa Thomas, Warren King, and Damazo Vidal

as partners of Juliet Homes.[14]  (Second Am. Compl. ¶ 172, Doc. No. 114-1, at 17.)  Courts have held that limited partners may owe fiduciary duties to other partners in certain circumstances. *McBeth v. Carpenter*, 565 F.3d 171, 177 (5th Cir. 2009); *Dunnagan v. Watson*, 204 S.W.3d 30, 46-47 (Tex. App.—Fort Worth 2006, pet. denied); *Zinda v. McCann St., Ltd.*, 178 S.W.3d 883, 890 (Tex. App.—Texarkana 2005, pet. denied).  The Trustees allege facts that, if proven, may establish a fiduciary duty to the Juliet Debtors and the breach of that duty.

With respect to the other named defendants, the Trustees do not allege a partnership relationship or any other special relationship that would give rise to a formal or informal duty. The Trustees therefore fail to state a claim for constructive fraudulent transfer against any defendant other than those listed as partners of Juliet Homes.  The Court denies leave to amend to add the constructive fraud claim against the non-partner defendants.

Although the Trustees have alleged constructive fraudulent transfers against the defendants listed on the Transfer Chart, they have not pleaded a separate cause of action for constructive fraud as to any defendant against whom they do not allege a special relationship. *See Nobles v. Marcus*, 533 S.W.2d 923, 925 (Tex. 1976) ("Fraudulent conveyance . . . is in addition to, and separate from, an action for fraud.").  Without alleging a special relationship, the Trustees' state-law claim for fraudulent transfer does not also state a separate claim for constructive fraud.

---

[14] The Second Amended Complaint also lists 9745 Interests c/o David Greenberg, as a partner.  However, the Second Amended Complaint does not allege that David Greenberg, while acting in his capacity as a representative of 9745 Interests, breached any fiduciary duty 9745 Interests may have owed to Juliet Homes.  9745 Interests is not alleged to have received any transfers, and it is one of the Dismissed Defendants.

### C. Conclusion

The fraud claims arise out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the Original Complaint, so the claims relate back to the date of the Original Complaint as to the original defendants. Fed. R. Civ. P. 15(c)(1)(B).

Thomas Boyd is the only new defendant against whom a fraud claim is asserted. The Trustees allege that the fraudulent approval of mortgage loans continued into 2007, and that the injury Juliet allegedly suffered as a result of this fraud occurred in and after the subprime collapse during the summer of 2007. (Second Am. Compl. ¶ 192, Doc. No. 114-1, at 26.)

The limitations period under § 108(a) is the state-law limitations period for fraud, which ends later than the two-year period after the entry of the order for relief. In Texas, the limitations period for fraud or breach of fiduciary duty claims is four years from the time the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.004(a)(4)-(5). A cause of action generally accrues when an injury results from a wrongful act. *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998). The cause of action for fraud against Boyd did not accrue until 2007, when Juliet allegedly suffered injury as a result of Boyd's alleged misrepresentations. The Trustees motion to amend in February 2010 was therefore within the limitations period. The claim against Boyd is not barred, and the claims against the original defendants relate back.

The Court grants leave to add the actual fraud claim against Warren King, Caroline Brown, Thomas Boyd, and First Texas Residential. Amendment of the complaint to add an actual fraud claim against any other defendants would be futile. The Court therefore denies leave to amend to add the actual fraud claim against all other defendants, but will allow the Trustees to replead the actual fraud claim against other defendants. *See Hart v. Bayer Corp.*, 199 F.3d 239 (5th Cir. 2000) ("Although a court may dismiss the claim [for failure to meet Rule

9(b)'s pleading requirements], it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.") (citing *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 675-76 (2d Cir. 1991)).

The Court grants leave to add the constructive fraud claim against Bernie Kane, Malladi Reddy, Melissa Thomas, Warren King, and Damazo Vidal.  The Court denies leave to add the constructive fraud claim against any other defendant.

## VI.  New Cause of Action for Punitive Damages

The Court grants leave to add the punitive damages claim with respect to the defendants against whom the Trustees have stated actual fraud or constructive fraud claims.  To be entitled to punitive damages under Texas law, a plaintiff must prove by clear and convincing evidence that the harm with respect to which the plaintiff seeks recovery of exemplary damages resulted from fraud, malice, or gross negligence committed by that defendant.  Tex. Civ. Prac. & Rem. Code § 41.003.

The Trustees allege generally that the defendants are liable for punitive damages "[t]o the extent they willfully, callously, and/or with reckless indifference participated in directly or took no action to prevent the acts or omissions" leading to the transfers.  (Second Am. Compl. ¶ 227, Doc. No. 114-1, at 37.)  This generalized and qualified allegation is not enough to state a plausible claim of entitlement to punitive damages.  In order to state a claim for punitive damages, the Trustee must allege facts that could support a finding of fraud, malice, or gross negligence.  The Trustees have not alleged any such facts against most of the new defendants, many of whom are mentioned only on the Transfer Chart.

Either actual or constructive fraud may support a claim for exemplary damages.  *See Saada v. Harrison*, 2002 WL 32341817, at \*4 (Tex. App.—Eastland 2002, no pet.) (allowing exemplary damages where plaintiffs proved a breach of fiduciary duty).  As discussed above, the Trustees have not pleaded actual fraud against any defendants except Warren King, Caroline Brown, Thomas Boyd, and First Texas Residential.  They have not pleaded constructive fraud against any defendants except Bernie Kane, Malladi Reddy, Melissa Thomas, Warren King, and Damazo Vidal.  The Trustees therefore have not stated a claim for exemplary damages on the basis of fraud against any defendants but Warren King, Caroline Brown, Thomas Boyd, First Texas Residential, Bernie Kane, Malladi Reddy, and Melissa Thomas.  *See Thompson v. Rodriguez*, 2010 WL 3834586, at \*7 (Tex. App.—Fort Worth 2010, no pet.) (holding that where the plaintiff "failed to prove her entitlement to summary judgment on the fraud claim, she failed to prove her entitlement to exemplary damages as well").

Furthermore, even if the Trustees were not required to state an independent claim for fraud to prove entitlement to punitive damages, the Trustees have not alleged facts against any other defendants—most of whom are mentioned only in the list of parties and on the Transfer Chart—that would support a finding of fraud.  The Trustees also do not plausibly plead malice or gross negligence with respect to any defendants.

The punitive damages claim arises out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the Original Complaint, so the claim relates back to the date of the Original Complaint.  Fed. R. Civ. P. 15(c)(1)(B).  Amendment would not be futile as to those defendants against whom the Trustees have stated a claim.  The Court grants leave to add the punitive damages claim against Warren King, Caroline Brown, Thomas Boyd, First Texas

Residential, Bernie Kane, Malladi Reddy, and Melissa Thomas.  The Court denies leave to add the punitive damages claim against all other defendants.

## VII.  New Factual Allegations

The Trustees seek to supplement their factual allegations, both generally and with respect to specific causes of action, including the veil-piercing cause of action.  The Court grants leave to add new factual allegations.

## VIII.  Notice Issues

The Second Amended Complaint seeks to remove Town Creek Partners and to add Town Creek Companies, LLC.  The Motion to Amend was not served on Town Creek Partners or Town Creek Companies, LLC.  The Court therefore does not consider whether this amendment falls within Rule 15(c)(1)(C), and neither grants nor denies leave to change the naming of the party.  With respect to other unserved defendants, the Court allows amendment to the extent otherwise stated, but without prejudice to those defendants' ability to file motions to dismiss.

## IX.  Removal of Defendants

The Second Amended Complaint removes Douglas Allen Brown as a defendant.  The Court grants leave to remove Brown as a defendant.

### CONCLUSION

The Trustees' motion to amend is granted in part and denied in part.  The Trustees failed to state any claim against the Dismissed Defendants.  The Court therefore denies leave to add the Dismissed Defendants.

The Court denies leave to add the existing federal-law and state-law fraudulent transfer claims against most of the new defendants.  The limitations period on the avoidance actions has already run against all new defendants except William Marsh-Resco I, LP; Marquis Capital II

Westcott, LP; Marquis Capital II, LLC; and Sorella Group.  Rule 15's relation-back provision does not apply to any other new defendants because the Trustees' failure to add the defendants was not based on a mistake of identity.  Equitable tolling does not apply because the Trustees failed to exercise sufficient diligence.  The Court therefore denies leave to add the avoidance actions against any other new defendants.

The Court grants leave to expand the unjust enrichment claim into a conversion/misappropriation of assets/unjust enrichment claim as to the existing defendants.  The limitations period has already run on the conversion/misappropriation of assets/unjust enrichment claim, and amendment would be futile as to all the new defendants except William Marsh-Resco I, LP; Marquis Capital II Westcott, LP; Marquis Capital II, LLC; and Sorella Group.  The Court denies leave to add the conversion/misappropriation of assets/unjust enrichment claim against any other new defendants.

The Trustees have failed to state a claim for actual fraud against any defendant except Warren King, Caroline Brown, Thomas Boyd, and First Texas Residential.  The Court grants leave to add the actual fraud claim as to Warren King, Caroline Brown, Thomas Boyd, and First Texas Residential, and denies leave to add the actual fraud claim as to all other defendants.  The Trustees may replead the claims that they failed to state in the Second Amended Complaint.

The Court grants leave to add the constructive fraud claim against Bernie Kane, Malladi Reddy, Melissa Thomas, Warren King, and Damazo Vidal.  The Court denies leave to add the constructive fraud claim against any other defendant.

The Trustees have stated a claim for punitive damages only as to those defendants against whom they have stated a claim for fraud.  The Court grants leave to add the punitive damages claim against Warren King, Caroline Brown, Thomas Boyd, First Texas Residential, Bernie

Kane, Malladi Reddy, Melissa Thomas, and Damazo Vidal.  The Court denies leave to add the punitive damages claim against any other defendant.

The Trustees may add the following new defendants:  Thomas Boyd; William Marsh-Resco I, LP; Marquis Capital II Westcott, LP; Marquis Capital II, LLC; and Sorella Group.  All claims would be futile against all other new defendants, and the Court denies leave to add any other new defendants.

SIGNED **December 16, 2010.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE